Derek T. Anderson, SBN 208141
DEREK T. ANDERSON, APC
1850 Fifth Avenue
San Diego, California 92101
Telephone: 619.237.0099
Facsimile: 619.237.0199
anderson_dt@hotmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODRIGO MAYORGA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PARSONS BRINKERHOFF, INC.;<br>DOES 1 through 20, inclusive,<br><br>　　　　Defendants. | Case No.: '16CV2087 JAH WVG<br><br>Complaint Filed: Click here to enter a date.<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT; TERMINATION IN VIOLATION OF PUBLIC POLICY; BREACH OF EMPLOYMENT CONTRACT; CONVERSION; INJUNCTIVE RELIEF; DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Rodrigo Mayorga ("Plaintiff") alleges the following facts and causes of action as follows:

## I.

## NATURE OF THE ACTION

1.　Plaintiff brings this action seeking to put an immediate stop to, and to obtain redress for, defendant Parsons Brinkerhoff, Inc.'s ("Defendant") unlawful actions related to and arising from Defendant's unlawful infringement of Plaintiff's copyright (registration number TXu 1-937-969) and violations of California law.

/ / /

/ / /

/ / /

COMPLAINT

2. Defendant's continuing exploitation of Plaintiff's intellectual property is causing and unless immediately enjoined will continue to cause, enormous and irreparable harm to Plaintiff.

## II.

## JURISDICTION AND VENUE

3. This action seeks damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. §501.

4. This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6. This Court has personal jurisdiction over Defendant because, among other things, Defendant is doing business within this judicial district, the acts of infringement complained of herein occurred within this judicial district, and Defendant has caused injury to Plaintiff and his property within this judicial district.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or §1400(a).

## III.

## PARTIES

8. Plaintiff, during the relevant times that the herein alleged facts, wrongdoing, injuries, and damages arose, was, an employee and former employee of Defendant.

9. During all relevant times alleged herein, Defendant was and continues to be a corporation doing business in the State of California and the County of San Diego.

10. The true names and capacities of defendants DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sues said DOE defendants

COMPLAINT

by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants herein designated as a DOE is responsible in some manner for the events and happenings herein referred to, who may have caused injuries and damages and who may be necessary for complete adjudication of the legal and equitab[le] issues alleged herein. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff also designates all unknown persons claiming any interests in any property at issue in this suit as DOE parties.

## IV.
## **GENERAL ALLEGATIONS**

11. Plaintiff was offered and accepted a position of employment with Defendant at its San Francisco office on or about June 1, 2001.

12. At the time of Plaintiff's initial hiring on June 1, 2001, he held the position of Graphic Designer, Grade ST-8, at a rate of $980.00 per week.

13. On or about June 2013, Plaintiff requested to be transferred to Defendant's San Diego office.

14. Defendant denied Plaintiff's request to be transferred to San Diego and Plaintiff tendered his resignation on or about August 14, 2013.

15. In response to Plaintiff's tendered resignation, Defendant requested Plaintiff withdraw his resignation and continue work for Defendant as a temporary part-time employee in San Diego.

16. Plaintiff withdrew his resignation and on or about September 3, 2013 his employment with Defendant was changed to temporary part-time employee status.

17. On or about September 11, 2013 Plaintiff moved to San Diego and began work at the Defendant's San Diego office.

18. In or about November of 2013, Plaintiff, on his own time, began to consider the geography of San Diego and opportunities for an innovative mass transit system. Plaintiff is originally from Colombia, and in his native country mass transit gondola systems are used in terrain that is similar to the steep canyons and hills of San Diego.

19. Utilizing his own time and resources, Plaintiff began to develop his unique idea, which he called "Metrocable," between November and December 2013.

20. Plaintiff's idea was to connect by a gondola transit system downtown San Diego to Balboa Park and other regions within the city that were not well-served by current mass transit infrastructure.

21. Plaintiff took into account factors including multi-modal connectivity between downtown San Diego, San Diego City College, Balboa Park, Hillcrest, and Mission Valley, and the lack of a reliable transit system.

22. Plaintiff's analysis of a gondola transit system included costs/benefits, frequency of service, urban integration, flexibility, public concerns, safety, implementation and operational cost, reliability, traffic and parking footprint, expandability, integration with other transit modes, environmental impact, gondola transit systems as a proven technology, travel speeds, and current needs and deficiencies.

23. On or about August 6, 2013, Plaintiff placed a copyright on his Metrocable presentation.

24. After placing a copyright on his Metrocable presentation, Plaintiff mentioned his idea to Michael Palacios, the then San Diego Area Manager for Defendant. Mr. Palacios asked Plaintiff to present his idea to Defendant's personnel.

25. On or about December 2013 Plaintiff met with Mr. Palacios and Toni Bates, head planner for Defendant in San Diego.

26. Pursuing his idea further, Plaintiff also purchased and studied material on existing cable systems around the world, and in April of 2014, traveled to Medellín, Colombia to attend the World Urban Forum where he went on an in-depth tour of that city's gondola system. Plaintiff's costs and travel expenses in pursuit of his idea on the Metrocable system were at his own expense.

27. Soon thereafter, Plaintiff met with David Schumacher, the head of planning for San Diego Association of Governments ("SANDAG").

28. Plaintiff met with SANDAG and Mr. Schumacher on or about April 22,

4
COMPLAINT

2014.

29. Mr. Schumacher was receptive to Plaintiff's idea of Metrocable in San Diego.

30. On or about August 5, 2014, Plaintiff submitted his application, deposit, and fee for Metrocable to the United States Copyright Office ("US Copyright Office"). All of Plaintiff's Metrocable submissions were the sole work of Plaintiff.

31. In August of 2014, a meeting was set for Plaintiff to present his Metrocable system to Ron Roberts, Supervisor for the San Diego County Board of Supervisors, Fourth District.

32. Shortly before the meeting with Plaintiff and Ron Roberts in August of 2014, Rex Plummer, Regional Manager for Defendant, ordered Plaintiff to remove his copyright from the presentation and replace it with Defendant's logo. Although Plaintiff complied with his supervisor's order, at no time did Plaintiff intend to assign or assign his copyright for Metrocable to Defendant.

33. The meeting was held on or about August 8, 2014 and Plaintiff's concept was well received by Supervisor Roberts, who set up a further meeting with the heads of various transit agencies of San Diego to discuss the concept.

34. On or about September 4, 2014, Plaintiff presented his Metrocable concept to the San Diego Metropolitan Transit System. Again his presentation was well-received.

35. On September 26, 2014, Plaintiff signed a "Contract Employment Agreement" with Defendant for a project assignment that was to be completed by March of 2015, a six-month term.

36. In September of 2014, SANDAG issued a Request for Proposal ("RFP") for a feasibility study for the Metrocable system (the "Project"). Defendant assembled a team around Plaintiff to respond to the RFP and make a submittal. Plaintiff and the team made the submittal, were interviewed and were awarded a $90,000.00 contract to prepare a feasibility study for the Project.

37. Immediately after the feasibility study for the Project was awarded in or

about late December of 2014, Plaintiff began to notice a lack of communication from his superiors and Plaintiff was excluded from meetings and negotiations between Defendant and SANDAG related to the Project.

38. In approximately December 2014 Plaintiff reported his belief that Defendant was intentionally excluding him from the Project and taking his property, the Metrocable concept, for its own gain without his consent. As a result, Plaintiff requested a meeting with Defendant's managers regarding the Project, Jeff Howard and Rex Plummer.

39. Mr. Howard and Mr. Plummer refused to meet with Plaintiff, and approximately a week later Plaintiff was fired on or about December 17, 2014 by Defendant's HR manager and Plaintiff's immediate supervisor. At that time, Plaintiff was only halfway through his six-month employment contract with Defendant. Plaintiff's supervisor told him that his contract was being cancelled because they found "another graphic designer in San Francisco."

40. Plaintiff is informed and believes he was shut out from the Project and fired in response to the reports he made and in furtherance of Defendant's plan to take possession of Plaintiff's property and all of the financial benefits of its use and application in developing the Project in San Diego and other cities.

41. On or about May 12, 2015 Plaintiff's copyright was certified by the United States Copyright Office for his Metrocable system, which includes a comprehensive presentation explaining what the system is and its applicability in San Diego. Registration of Plaintiff's copyright dates back to his complete application on August 5, 2014.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V.
## FIRST CAUSE OF ACTION
### Copyright Infringement
### (17 U.S.C. §501)

42. Plaintiff repeats and incorporates by this reference the preceding paragraphs.

43. At all times relevant hereto, Plaintiff has been the author and owner of the Project which has been used, distributed, and profited on by Defendant through contracts with one or more government agencies.

44. Defendant first infringed on Plaintiff's work in or about December of 2014.

45. For the work at issue in this matter, Plaintiff holds a federal copyright.

46. Without authorization, Defendant reproduced and distributed the following owned and copyrighted work of Plaintiff: Metrocable San Diego, U.S. Copyright Registration Number TXu 1-937-969.

47. Plaintiff did not authorize Defendant's copying, display or distribution of his work.

48. Defendant has profited from the use of Plaintiff's work, but Plaintiff has received no payments from Defendant's profit.

49. Defendant infringed the copyright in Plaintiff's works by reproducing, distributing and/or publicly displaying the work and profited from the work through a contractual relationship with SANDAG, among others, without proper approval or authorization of Plaintiff.

50. Defendant knew the infringed work belonged to Plaintiff and that Defendant did not have permission to exploit Plaintiff's works.

51. Defendant knew its acts constituted copyright infringement.

52. Defendant's conduct was willful within the meaning of the Copyright Act.

53. As a result of their wrongful conduct, Defendant is liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered, and will continue to suffer, substantial losses thereby.

54. Plaintiff is entitled to recover damages, which include his losses and any and all profits Defendant has and will make as a result of its wrongful conduct pursuant to 17 U.S.C. § 504, including an accounting of and a constructive trust with respect to such profits. Alternatively, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c).

55. In addition, because Defendant's infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

56. Plaintiff is entitled to recover his attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505 because Plaintiff's copyright registration pre-dates Defendant's infringement.

57. Plaintiff is informed and believes and on that basis alleges that unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's rights in the Project. Plaintiff is therefore entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct.

## VI.
## SECOND CAUSE OF ACTION
### Termination In Violation of Public Policy

58. Plaintiff repeats and incorporates by this reference the preceding paragraphs.

59. Plaintiff was terminated in December 2014 for reporting his belief that Defendant was intentionally excluding him from the Project and taking his property, the Metrocable concept, for its own gain without his consent.

60. Defendant's actions against Plaintiff contravened the express public policies of the United States of America and California which included Plaintiff exercising his intellectual property rights to the Project under 17 U.S.C. §501 and its related copyright and for raising concerns that Defendant was essentially stealing

from him by converting the Project for its own use and benefit.

61. As a proximate result of Defendant's actions, Plaintiff has been harmed in that he has suffered money damages and financial losses and benefits in an amount according to proof.

62. As a further proximate cause of Defendant's actions against him, Plaintiff has suffered humiliation, mental anguish and emotional and physical distress, and has been injured in an amount according to proof.

63. In doing the acts complained of above, Defendant knew that the termination of Plaintiff was unlawful and in violation of public policy. Notwithstanding this knowledge, Defendant acted fraudulently, maliciously, oppressively and in conscious disregard of the rights of Plaintiff, in a manner that is despicable and which an ordinary and decent society does not tolerate, and by reason thereof Plaintiff alleges that he is entitled to recover exemplary damages against Defendant.

64. Specifically, Plaintiff alleges that Defendant acted fraudulently in concocting a scheme to convert Plaintiff's Metrocable concept for its own use and benefit and acted to conceal Defendant's actions in misrepresenting Plaintiff's property as Defendant's own.

65. Defendant has acted maliciously in causing and using the termination of Plaintiff's employment to further its fraudulent misappropriation of Plaintiff's property with the intention to cause injury to Plaintiff thereby. Defendant carried out its scheme to terminate Plaintiff's employment and appropriate Plaintiff's property with a willful disregard of Plaintiff's rights thereto.

66. Defendant acted with oppression in depriving Plaintiff not only of his livelihood, but also his property in a manner that is despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.

///
///

# VII.
## THIRD CAUSE OF ACTION
### Breach of Employment Contract

67. Plaintiff repeats and incorporates by this reference the preceding paragraphs.

68. Plaintiff and Defendant entered into an employment relationship memorialized by contract on September 26, 2014, titled "Contract Employment Agreement" for a project assignment that had a sixth-month term and was to be completed on March of 2015 ("Contract").

69. Defendant promised, through promises made to Plaintiff by Defendant's personnel, that Plaintiff was hired for the full six-month term of the Contract and would only be terminated for good cause. Additionally, Defendant's conduct in offering Plaintiff further employment in San Diego, in order to entice him to remain with Defendant, and in continuing to represent to Plaintiff that he was contractually employed with Defendant, was conduct by Defendant indicating that Plaintiff would only be terminated for good cause.

70. Plaintiff fulfilled his obligations under the Contract and fully intended to complete the full six-month term.

71. Defendant breached the Contract when it terminated Plaintiff's position on or about December 17, 2014, as part of Defendant's plan to acquire Plaintiff's Metrocable and profit from the unauthorized use of Plaintiff's property.

72. Plaintiff suffered contract damages due to the loss of income for an approximate three month span in an amount not less than fifteen thousand dollars ($15,000), to be more specifically proven at trial.

73. Defendant's termination of the Contract was the direct, actual, and proximate cause of Plaintiff's contractual damages.

74. Plaintiff, despite his efforts to mitigate his damages, remains unemployed after his termination by Defendant and continues to suffer economic damages and out-of-pocket expenses in an amount of damages to be more

10
COMPLAINT

specifically proven at trial.

## VIII.
## FOURTH CAUSE OF ACTION
### Conversion

75. Plaintiff repeats and incorporates by this reference the preceding paragraphs.

76. Plaintiff is the owner of the Project. Plaintiff's ownership entitles Plaintiff to include every intangible benefit and prerogative susceptible of possession or disposition of Plaintiff's property.

77. Defendant intentionally and substantially interfered with Plaintiff's intellectual property in the Project through the deceitful taking of Plaintiff's property, refusing to return the property, and using the property for Defendant's own benefit in wrongful disposition of Plaintiff's property.

78. Plaintiff did not consent to the taking of Plaintiff's property and has requested the return of the property.

79. Defendant has refused.

80. Plaintiff has been financially harmed for the value of the property.

81. Defendant's conduct was a substantial factor in causing the Plaintiff harm by the taking of Plaintiff's property and use by Defendant of said property, preventing its use by Plaintiff.

82. Plaintiff alleges upon information and belief that Defendant has used Plaintiff's property to enter into feasibility study contracts whereby Defendant has been paid, and continues to be paid, by SANDAG, and other as yet unknown agencies, or other groups.

83. Defendant's actions have prevented Plaintiff from receiving the financial benefits of the Project.

84. Plaintiff is informed and believes, and thereon alleges, that in doing the acts complained of above, Defendant acted fraudulently, maliciously and in conscious disregard of the rights of Plaintiff, in a manner that is despicable and which

an ordinary and decent society does not tolerate, and by reason thereof Plaintiff alleges that he is entitled to recover exemplary damages against Defendant.

85. Specifically, Plaintiff alleges that Defendant acted fraudulently in concocting a scheme to convert Plaintiff's Metrocable concept through misrepresentation to Plaintiff, that Defendant deceived Plaintiff into presenting and explaining his Metrocable idea for Defendant's own gain, and Defendant has acted to conceal Defendant's action in passing Plaintiff's property off as Defendant's own.

86. Plaintiff is entitled to a constructive trust on all of Defendant's ill-gotten gains from the conversion and use by Defendant of Plaintiff's property where Defendant has misrepresented Plaintiff's property as its own.

87. Plaintiff is further entitled to disgorgement of all of Defendant's ill-gotten gains from Defendant's use of Plaintiff's property.

## IX.
## JURY DEMAND

88. Plaintiff hereby demands a jury trial in this case.

## X.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1) For economic damages in such amount as may be found, or as otherwise permitted by law;

2) For general damages which will be more specifically proven at trial;

3) For statutory damages;

4) For punitive damages which will be more specifically proven at trial;

5) For a constructive trust and disgorgement of Defendant's gains from the use of Plaintiff's property;

6) For an accounting of, and the imposition of constructive trust with respect to, Defendant's profits attributable to their infringements of Plaintiff's copyright;

7) For injunctive relief to prevent Defendant's further infringement of

Plaintiff's copyright;

8) For costs of suit, reasonable litigation expenses, and attorneys' fees according to contract and/or statute; and

9) For such other and further relief as the Court may deem proper or necessary.

Dated: August 16, 2016  DEREK T. ANDERSON, APC

By: <u>s/Derek T. Anderson</u>
Derek T. Anderson
Attorney for Plaintiff
Email: anderson_dt@hotmail.com